UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH DINNOCENZO,<br><br>                  Claimant,<br><br>    v.<br><br><br><br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>                  Defendant. | Civil Action No. 09-cv-2743 (SDW)<br><br><br><br><br>OPINION<br><br>September 13, 2010 |

**Wigenton, District Judge,**

      Before the Court is Claimant Joseph Dinnocenzo's appeal of Administrative Law Judge Richard DeSteno's ("ALJ") denial of Dinnocenzo's disability claim under Section 216(i) of the Social Security Act ("the Act"), 42 U.S.C. § 416(i), his Disability Income Benefits ("DIB") claim under Section 223 of the Act, 42 U.S.C. § 423, and his Supplemental Security Income ("SSI") benefits claim under Section 1614(a)(3)(A) of the Act. 42 U.S.C. § 1382c(a)(3)(A).[1] This appeal is decided without oral argument pursuant to Local Rule 9.1. The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated below, this Court **affirms** the Commissioner's decision

---

[1] The ALJ's decision became the Commissioner of the Social Security Administration's ("Commissioner") final decision on April 6, 2009, when the Appeals Council affirmed the ALJ's denial. *See* 20 C.F.R. §§ 404.981, 416.1481.

1

in part for the period from November 6, 2002[2] to April 10, 2005 and **reverses** the Commissioner's decision in part for the subsequent period beginning April 11, 2005.

I.      **Background and Procedural History**

On August 6, 2003, Joseph Dinnocenzo filed for SSI and DIB benefits under the Social Security Act. Claimant claims disability beginning on November 6, 2002, after leaving his last employment as a clerk at a Quick Check convenience store. Claimant also worked as a "prep cook" in a pizza parlor and as a school bus driver in the past. Claimant's applications for benefits were denied initially and then again on reconsideration. On December 16, 2005, the ALJ issued an unfavorable decision denying Claimant's benefits. The Appeals Council granted Claimant's request for review and subsequently vacated the decision of the ALJ and remanded for the resolution of evidentiary issues. The ALJ again issued an unfavorable decision on October 24, 2007, and the Appeals Council subsequently affirmed the ALJ's decision on April 6, 2009. Thus, Claimant commenced the present action seeking a disability finding or a remand of his claims to the Commissioner for reconsideration in light of the alleged deficiencies in denying Claimant's disabled status.

A.      *Medical Treatment Records for Claimant's Impairments*

Claimant suffers from a number of impairments, including morbid obesity, chronic obstructive pulmonary disease with sleep apnea, diabetes with cellulitis of the left leg, persistent cardiac arrhythmia, a right shoulder fracture, general osteoarthritis, migraine headaches, and depression. On March 1, 2004, Dr. Hoffman found that: Claimant has "a history of chronic obstructive pulmonary disease" and "problems with sleep apnea" for which he has "been treated with a combination of inhalers . . . nebulizing machines . . . [and] a BiPAP machine"; Claimant

---

[2] Although Claimant only alleges disability beginning on November 6, 2002 (Pl.'s Br. 3) the ALJ noted in his decision that there was a conflict regarding the alleged onset date. To Claimant's benefit, the ALJ considered Claimant's case from the perspective of the earliest contended onset date: October 3, 2001.

had difficulty walking more than a block in distance but used no assistive devices; he "was hospitalized in 2001 . . . for cellulitis of the left leg"; he "has been treated for depression over the past two years"; he has a family history of diabetes; and he suffers from chest pains. Dr. Hoffman noted that Claimant is a smoker living alone in the YMCA and opined that Claimant is "morbidly obese . . . with a history of sleep apnea," suffering from "chronic obstructive pulmonary disease . . . [and] asthmatic symptomology"—conditions that are "certainly exacerbated by the morbid obesity."

     Claimant fractured his left shoulder due to a fall on April 11, 2005 and underwent open reduction and internal fixation surgery. Claimant subsequently re-injured his left arm and was diagnosed with a left humeral non-union by Dr. Sirkin as well as with complete radial nerve palsy by Dr. Tan. On August 18, 2005, Dr. Sirkin performed an "open reduction and internal fixation of [the] left humeral shaft fracture" with cerclage wires. During the same procedure, Dr. Tan performed "exploration and neurolysis of [the] radial nerve." Postoperative diagnoses indicate Claimant's continuing nonunion of the left humeral shaft and complete radial nerve palsy, respectively. In a subsequent postoperative evaluation, Dr. Tan explained: that "the nerve graft . . . would have been . . . too extensive to expect any reasonable return of the radial nerve function"; that Claimant was "wearing a radial nerve splint for hand extension"; that Claimant indicated a four out of ten pain level during this examination; and that he would consider "options for tendon transfers."

     In addition to his physical impairments, Bayonne Community Mental Health Center has diagnosed Claimant with depression. Dr. Gerard A. Figurelli, who conducted a psychiatric evaluation in 2004, found that Claimant "manifested no significant deficits with immediate recall, concentration on structured tasks of relatively short duration, or the recall of more remote,

personal life history information," but he did have "difficulty with delayed immediate recall." Claimant "denied any history of suicidal . . . ideation, intent, plan or attempts" at that time but did report that he suffered from depression.

The agency appointed psychiatrist found that Claimant experiences: moderate restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace; mild difficulties in maintaining social functioning; no episodes of decompensation; and no evidence establishing the presence of the "C" criteria for a mental impairment. Additionally, Claimant's Mental Residual Functional Capacity Assessment shows moderate limitation in ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to complete a normal workweek without interruptions, and ability to get along with coworkers or peers.

C.   *Claimant's Testimony*

At the 2005 ALJ hearing, Claimant testified that: he is 5'6" with a weight fluctuating between 330 and 370 pounds; he has had lifetime breathing problems, including chronic obstructive pulmonary disease and sleep apnea, but uses a CPAP machine to control the problem; his doctor diagnosed him with "a touch of diabetes," but he has no symptoms from it; he can neither sit or stand for very long without his legs going numb nor can he walk very far without getting tired; his right arm fracture has healed; he has difficulty interacting with others, maintaining relationships, and concentrating; and he is depressed and spends most of his time watching television or sleeping in his room at the YMCA. In addition, Claimant fractured his right arm in the summer of 2004, but the injury has healed and is not disabling.

Claimant also stated that he fell and sustained a left arm fracture that "shattered all the nerves in [his] arm," such that he could not feel anything from his elbow to his hand. Claimant

re-injured his left arm three weeks later, which worsened his condition: he initially could not bend his fingers and can only now "make a little bit of a fist, but can[not] straighten out [his] fingers." Additionally, because his "hand was limp and [he could not] pick it up because of [his] nerve[, his] hand would just hang." As a result, he wears a special elastic glove to keep his hand and fingers straight up and exercise them. In short, he felt that his "nerve is dead."

At the post-remand hearing, Claimant stated: that he was removed from a weight control support group because he made inappropriate comments to some of the female members; that he has urinary problems requiring frequent bathroom visits; that when he sits for too long his legs go numb; that he has migraines; that his various medications make him fall asleep; and that he has attempted suicide. Claimant also testified as to the worsening condition of his left arm: he uses his left arm only five percent of the time; he could not lift more than five pounds with his left arm; he has a hard time putting his left arm in his shirt and experiences pain while doing so; he uses his left hand very little, only to assist him in eating: he walks to the supermarket to select items but must have an employee deliver them to his home because he cannot carry them; and he performs some light cooking on a frying pan in his room. He described his left hand as "useless" and demonstrated to the ALJ that he could not raise his left arm above chest-level.

## II.     Standard of Judicial Review

In reviewing the ALJ's decision, this Court must determine whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g). A reviewing court must uphold the ALJ's factual decisions where they are "supported by substantial evidence." *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The standard involves "less than a preponderance of the evidence but

more than a mere scintilla," and courts "are not permitted to weigh the evidence or substitute [their] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  "A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).  "The decision to . . . [reverse] should be made only when the administrative record of the case has been fully developed," when "substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits," and when "it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." *Id.* at 221-22 (internal citations omitted).

**III.    Discussion**

The SSA has established a five-step process for evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).  First, the ALJ considers whether a claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, the ALJ assesses in the second step whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant suffers from a severe impairment, the third inquiry is whether that impairment or combination of impairments meets or equals the severity of a qualified impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listing of Impairments"), which results in a presumption of disability and the evaluation ends at this stage.  20 C.F.R. § 404.1520 (d).  If not, the ALJ assesses in the fourth step whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant cannot perform his past relevant work, then the final step is to determine whether there is other work that exists in significant numbers in the national

economy that the claimant, given his RFC, impairments, age, education, and work experience can perform. 20 C.F.R. § 404.1520(g).

During the evaluation, the ALJ must assess the credibility of the evidence demonstrating the claimant's disability to determine what should factor into disability status.[3] The ALJ is directed to "consider all . . . symptoms, including pain, and the extent to which [such] symptoms can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(a). Other evidence considered includes "statements or reports from [the claimant], [the claimant's] treating or non-treating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [his] impairment(s) and any related symptoms affect [his] ability to work." *Id.*

Claimant argues that the ALJ's decision is not supported by substantial evidence. (Pl.'s Br. 12.) With respect to steps one, two, and four of the disability analysis, the ALJ found, and the parties do not dispute, that Claimant has not engaged in any substantial gainful activity since November 5, 2002; Claimant's chronic obstructive pulmonary disease, obesity, depression, and left humeral fractures meet the C.F.R. severity threshold; and Claimant is incapable of performing any of his past relevant work. (Pl.'s Br. 3; AR. 20-21, 26.) However, Claimant disputes, and this Court must consider, (i) whether the ALJ properly determined that Claimant's left humeral fracture meets or medically equals the criteria specified in the listing of impairments, (ii) whether the ALJ properly considered the Plaintiff's morbid obesity in his assessment of disability; and (iii) whether the ALJ adequately posited accurate hypotheticals to the vocational expert ("VE") consistent with the medical evidence.

**A.     The ALJ Erred in His Determination That Dinnocenzo Did Not Meet the**

---

[3] While this Court is not responsible for making determinations of fact regarding Claimant's credibility or the consistency of the medical evidence, it *is* required to ensure that the ALJ's procedure in making determinations of fact was proper. *See* 42 U.S.C. § 405(g).

7

**Requirements of Listing 1.07.**

In determining whether Claimant meets the requirements of a listed impairment, the ALJ must properly analyze the entire record so that the reviewing court can determine whether the decision was supported by substantial evidence. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (An ALJ's summary conclusion that appellant's impairments did not meet or equal any Listed Impairment, without discussing the evidence or explaining his reasoning, renders the ALJ's Step-Three determination beyond meaningful review.); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) ("an [ALJ's] decision should be accompanied by a clear and satisfactory explication of the basis on which it rests")  Here, the ALJ's finding that Claimant's left arm fracture simply did not meet the requirements of Listing 1.07 consisted of a recitation of those requirements with no explanation as to why Claimant's impairment did not fulfill them.  (AR. 21.)  Moreover, there was only brief mention of the impairment elsewhere in the opinion.  (*See* AR. 18-20, 22-23.)  Therefore, the ALJ's Step-Three discussion regarding Claimant's left arm impairment was not supported by substantial evidence.  *See Pierce*, 487 U.S. at 565.

More importantly, an examination of the record suggests reasonable minds can only arrive at the exact opposite conclusion from that of the ALJ.

Listing 1.07 states:

> Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Part 404, Subpart P, App. 1 § 1.07.

Listing 1.00M describes "continuing surgical management" as:

> [P]rocedures and . . . associated treatments related to the efforts directed toward

> the salvage or restoration of functional use of the affected part . . . includ[ing] . . . post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. Part 404, Subpart P, App. 1 § 1.00M.

Listing 1.00B describes "loss of function" as:

> [T]he inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment . . . last[ing] or . . . expected to last, for at least 12 months.

20 C.F.R. Part 404, Subpart P, App. 1 § 1.00B.

Here, the medical record states Claimant suffered from a "[c]omminuted displaced fracture [of the] left humeral shaft" in April 2005, AR. 303, which was later diagnosed as the "nonunion of [a] humeral shaft fracture" after Claimant re-injured the same and Dr. Sirkin's and Dr. Tan's unsuccessful attempts to repair the fracture and radial nerve function.  (AR. 399.)  The doctors' diagnosis coincides almost verbatim with the injury listed at 1.07.

On August 18, 2005, Claimant underwent open reduction and internal fixation of a left humeral shaft fracture with cerclage wires.  He had failure of hardware and a non-union.  (AR. 18.)  Contemporaneously, Dr. Tan also conducted "exploration and neurolysis of [the] radial nerve" in attempt to remedy Claimant's radial nerve palsy.  (AR. 399.)  Additionally, Claimant testified, and the medical record confirms in Dr. Tan's postoperative report, that the surgical attempt to restore radial nerve function was unsuccessful.  (AR. 401.)  Dr. Tan also concluded that restoration was not possible due to extensive damage and that the length of the nerve graft required "would be too extensive to expect any reasonable return of radial nerve function."  (Tr. 423.)  Claimant will also likely undergo further surgical treatment in the form of tendon transfers.  (AR. 416, 568.)  Therefore, it is also clear that Claimant's injury was under continuing surgical management and his nerve function was not expected to be restored within 12 months of

onset.

Claimant has also demonstrated that his injury has led to a loss of function under Listing 1.00B, such that he undoubtedly suffers from impairment under Listing 1.07. The SSA stipulates that functional loss determinations are "based on the medical and other evidence in the *case record*, generally *without* developing additional evidence about the individual's ability to perform the specific activities listed as *examples* in . . . 1.00B2c." 20 C.F.R. Part 404, Subpart P, App. 1 § 1.00B (emphasis added). Here, the medical record evinces that Claimant does suffer from a loss of function in his left arm, as he requires the assistance of a sleeve to keep his hand from going limp, he could barely make a fist with his left hand, and he is unable to perform fine and gross movements effectively on a sustained basis. Claimant suffers from radial nerve palsy, a condition that could not be treated by Dr. Tan and thus renders him without any radial nerve function in his left arm. (AR. 416.)

Moreover, Claimant's testimony concerning pain and dysfunction in his left arm are uncontroverted in the record and support a finding for loss of function. At the October 4, 2005 ALJ hearing, Claimant stated that he could only "make a little bit of a fist, but [could not] straighten out [his] fingers" and that he wore a special elastic glove to keep his hand from hanging limply because "[his] nerve is dead." (AR. 568, 572.) At the post-remand hearing in 2007, Claimant further testified that his condition had worsened: he could not lift anything with his left arm; he could put on a shirt despite being in pain and "hav[ing] a hard time putting [his] left arm in"; he used his left arm only five percent of the time; that his left hand was "useless"; and he could only raise his left arm to chest-level. (AR. 19-20, 580, 582-83, 591, 602.) Inexplicably, while the ALJ rejected Claimant's testimonies of pain and dysfunction as not credible (AR. 24) the ALJ noted records from South Hudson Medical dated February 15, 2005

through August 22, 2007 showing follow-up treatments that documented complaints of and treatment for disabling left-arm pain consistent with Claimant's testimony.  (AR. 19, 460-516.) As such, Claimant's testimony regarding his left arm impairment should be accepted.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (Holding that subjective complaints of pain can support a claim for disability benefits, and when such complaints are supported by medical evidence they should be given great weight.).  In light of the medical record and his own testimony, Claimant has demonstrated an inability to "independently initiate, sustain, or complete activities" with his left arm and hand.

Consequently, the record contains substantial evidence that Claimant is disabled under Listing 1.07.  The Court must decide whether to remand the case for further proceeding or to reverse and award Claimant benefits.  "Where further administrative proceedings would simply prolong appellant's waiting and delay his ultimate receipt of benefits, reversal is [] appropriate." *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).  The claimant in the present case has gone through two hearings before the ALJ followed by two petitions to the appeals council.  The disability determination has already taken seven years and the record is unlikely to change.  *Id.* Hence, with respect to the period beginning on April 11, 2005 and continuing to October 24, 2007, this Court finds Claimant disabled *per se* based on the requirements of Listing 1.07 and reverses the ALJ's decision.  *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (reversal of an ALJ's decision is appropriate "when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits" (quoting *Podedworny*, 745 F.2d at 222)).

**B.     The ALJ Properly Rejected Claimant's Complaints of Pain As To His Non-left Arm Related Ailments.**

The Court notes, however, that the ALJ did offer sufficient explanation in the rejection of Claimant's credibility in his testimony regarding his other physical impairments. ALJs must "consider all . . . symptoms, including pain, and the extent to which [such] symptoms can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(a). "[W]here a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984). However, the ALJ may accept some parts of the evidence and reject other parts so long as he considers all the evidence and gives some reason for discounting the evidence he rejects. *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). Here, the ALJ found that "[a]lthough the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." (AR. 24.) With respect to treatment, the ALJ noted that Claimant (1) was not fully compliant with prescribed medication, (2) continued to smoke despite having chronic obstructive pulmonary disease, and (3) did not go on a diet despite medically advised to do so. (*See* AR. 23, 340, 464, 466, 473.) The ALJ explained that this evidence suggested Claimant's symptoms were not as serious as he alleged. (AR. 23.) In addition, when asked why he could not do sedentary work during the post-remand hearing, Claimant stated that he urinated too frequently and became antsy from sitting. (AR. 20, 598.) The ALJ also considered Claimant's activities of daily living including cooking food, walking to grocery stores (although he cannot pick up the groceries himself after he sustained the left arm injuries as discussed supra), gambling in Atlantic City, and visiting relatives. (AR. 595-97.) This evidence of daily activities undermines Claimant's statements that his symptoms were disabling. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

It also bears noting that the fact the ALJ found that plaintiff could do a range of sedentary

work indicates that the ALJ did accept plaintiff's complaints of pain to a degree. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (the ALJ's finding that the claimant was restricted to sedentary work amounts to an acceptance of plaintiff's subjective allegation as precluding any work above the sedentary level). Therefore, aside from his treatment of the left arm injury discussed supra, the ALJ's credibility finding was conducted in accordance with the Social Security Act and is supported by substantial evidence. *See Stewart*, 714 F.2d at 290.

C.     **The ALJ Properly Considered Dinnocenzo's Obesity.**

Claimant contends that the ALJ failed to consider his obesity in accordance with the Commissioner's rulings and violated *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009). The Third Circuit in *Diaz* held that when an ALJ finds obesity is a severe impairment, he must consider its effects, individually and in combination with claimant's other impairments on her workplace function, at step three and at every subsequent step. *Id.* at 504-06.

Here, the ALJ's finding that Dinnocenzo's obesity was a severe impairment (AR. 21) triggered an obligation to discuss Dinnocenzo's obesity, individually and in combination with Dinnocenzo's other severe impairments. (*See id.* at 504.) The ALJ began his step-three analysis by noting that there is no specific medical listing for obesity, but that he did evaluate Claimant's obesity to determine whether it, in combination with the other impairments, increased the severity of the other impairments and specifically referred to the SSR 02-1p guidelines and Listing Sections 1.00Q, 3.00I, 4.00F, and the record as a whole. (AR. 21.)

Moreover, Claimant fails to demonstrate which listings would have been met by the combination of his impairments. An examination of the evidence and Claimant's allegations shows that, other than Listing 1.07 as discussed supra, no other listings could plausibly be met by Claimant's ailments. The ALJ found that "claimant has not met the pulmonary function test

13

requirements of listing 3.02 involving 'Chronic Pulmonary Insufficiency' and has not had 'attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year' as required by listing 3.03 involving 'asthma.'" (*Id*.)  The ALJ pointed to Claimant's hospital stay on August 18, 2005, where the doctors were aware of Claimant's obesity and yet noted that Claimant did not use any medication nor had any treatment for his chronic obstructive pulmonary disease. (AR. 23.)  Claimant's subsequent progress notes also indicated his chronic obstructive pulmonary disease was stable and he has been reluctant to see a pulmonologist.  (*Id*.)  The ALJ also found that Claimant's condition did not meet Listing 1.02 because of lack of evidence showing "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)."  (AR. 21.)  The ALJ points to the consulting physician's 2004 finding, which takes into account Claimant's morbid obesity, that Claimant has full range of body strength and full range of motion at the wrist, elbow, and shoulder.  (AR. 218-32.)  In addition, Claimant conceded during the administrative hearing that he had no significant symptoms from diabetes.  Given the evidence in the record, the ALJ performed a sufficient analysis that Claimant's obesity did not exacerbate Claimant's other impairments to the level of a listing at step-three.  (AR. 21-24.)

In evaluating Claimant's residual functional capacity ("RFC"), the ALJ relied upon the opinion of Dr. Arthur Howard, a State agency physician.  Dr. Howard took Claimant's obesity into consideration, but nevertheless found that Claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit six

hours in an eight-hour workday and push and pull without limitation. (AR. 286-87.) The ALJ also found evidence attesting that Claimant's obesity was life-long and that Claimant was able to work when he weighed 10-30 pounds more than during his administrative hearings. (AR. 24, 562.) Significantly, the ALJ took Claimant's obesity into account through crediting the examining report showing that Claimant's abnormal pulmonary function was exacerbated by Claimant's obesity. (AR. 221.) As a result of the finding, the ALJ limited Claimant's RFC to a range of sedentary work in an environment free of excessive pulmonary irritants. (AR. 24.) Therefore, the Court finds Claimant's claim that the ALJ failed to consider his obesity is not substantiated.

D.     **The ALJ Properly Included Questions Regarding Claimant's Mental Impairment in the Vocational Expert Hypothetical.**

Claimant further argues that the ALJ failed to include all of Dinnocenzo's mental impairments in the hypothetical questions given to the vocational expert ("VE").[4] (Pl.'s Br. 19-22.) It is well-settled that hypotheticals given to a vocational expert "must reflect all of a claimant's impairments . . . ." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The Third Circuit has held that the testimony of a VE based on hypotheticals encompassing all of the claimant's credibly established limitations qualifies as substantial evidence. *Covone v. Comm'r of Soc. Sec.*, 142 Fed. App'x. 585, 587 (3d Cir. 2005). The ALJ is not required to inform a VE of the claimant's every alleged impairment, only those impairments that have been determined to affect the claimant's ability to work. *Id.*; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.

---

[4] The ALJ's residual functional capacity assessment concluded that Claimant has the "residual functional capacity to perform work involving lifting and carrying objects weighing up to 10 pounds, primarily with the right, dominant arm with some assistance from the left arm as a helper; sitting up to six hours, and standing and walking up to two hours in an eight-hour day; in an environment free of excessive pulmonary irritants; *involving no greater than simple, repetitive tasks; not having extensive social interaction with other individuals throughout the day*." (AR. 24.) (emphasis added).

2005).

Here, Claimant argues that the ALJ's hypotheticals to the VE failed to incorporate the limitations noted on the Psychiatric Review Technique Form ("PRTF") and the Psychiatric RFC Form – namely, moderate difficulties in activities of daily living, mild difficulties in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. (Pl.'s Br. 20-21.)  However, these findings tend to support, rather than detract from the ALJ's finding that Claimant could do simple routine work.  *See Menkes v. Astrue*, 262 Fed. App'x. 410, 412 (3d Cir. 2008) (finding that moderate limitations in concentration, persistence and pace were accounted for by restricting work to "simple routine tasks.").  Indeed, the ALJ's hypotheticals are consistent with the agency psychiatrist's conclusion on the same PRTF form:  that Claimant has no significant impairment with respect to "[u]nderstanding/memory, CPP, adaptatin [sic] and socialization" and Claimant's "allegation of disability based on psychological factors is not credible . . . ."  (AR. 279.)  The ALJ properly noted the Claimant's own testimony that the medications helped him control his mental difficulties and the lack of medical evidence in this record to contradict the agency psychiatrist's conclusions, and therefore he accorded these opinions significant weight in determining Claimant's RFC.  (AR. 25.)  The psychiatric evaluation by Dr. Figurelli also concluded that Claimant's limitations in social and occupational medical functions are related primarily to his other medical conditions, and only secondarily related to his mental impairments.  (AR. 216.)  Furthermore, during the hearing on October 4, 2005, the ALJ states, and Claimant's attorney does not dispute that the "simple, repetitive tasks" aspect of the hypothetical accounts for Claimant's "problems with concentration and focus due to depression and anxiety."  (AR. 575.)  Therefore, the ALJ's hypothetical restricting Claimant's work to "simple routine tasks" accounted for Plaintiff's RFC, including Plaintiff's moderate

limitations in activities of daily living, concentration, persistence, and pace. *See Menkes*, 262 Fed. App'x. at 412.

As for Claimant's moderate limitation on the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Pl.'s Br. 21), the limitation added by the ALJ at the 2007 hearing of "extensive interaction with other individuals throughout the day" accounted for this. Therefore, this Court holds that the ALJ's hypotheticals adequately captured and recited all of Dinnocenzo's mental impairments and the limitations caused by those impairments during the period from November 6, 2002 to April 10, 2005, thereby qualifying the VE's testimony as substantial evidence. *See Covone*, 142 Fed. App'x. at 587.

## IV.   *Conclusion*

For the foregoing reasons, the Court holds that Claimant has been disabled on the basis of the nonunion of a left humeral facture as of April 11, 2005. Accordingly, the Court **affirms** the Commissioner's decision in part for the period from November 6, 2002 to April 10, 2005 and **reverses** the Commissioner's decision in part for the period beginning on April 13, 2005.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.

Orig:      Clerk
Cc:        Parties